```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Sheryl Stark,

                        Plaintiff,        08-CV-2309 (CPS)

        - against -
                                          MEMORANDUM OPINION
RJM Acquisitions LLC,                     AND ORDER

                        Defendant.

----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff Sheryl Stark brings this putative class action against defendant, RJM Acquisitions LLC, alleging that it failed effectively to provide her with debt validation notice as required by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq*. Presently before the Court is defendant's motion for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part, and plaintiff is directed to move for class certification within 90 days of the date of this memorandum opinion.

## BACKGROUND

The following facts are drawn from the Complaint, the parties' Local Rule 56.1 statements, and submissions in connection with this motion. Disputes are noted.

Plaintiff Sheryl Stark is a resident of the State of New York and the Eastern District of New York. Compl. ¶ 4. Defendant RJM Acquisitions, Inc., is a New York business engaged

in the collection of debts owed by consumers. *Id.* ¶¶ 6-7.

According to defendant, at an unspecified time prior to May 7, 2008, plaintiff incurred a debt of $986.79 on her Target National Bank Visa card. Defendant's Local Rule 56.1 Statement ("Def.'s Stmt.") ¶ 1. On April 25, 2008, defendant purchased certain debt obligations owned by Target National Bank, presumably including a debt owed to Target by plaintiff. *Id.* ¶ 2. Plaintiff made no payments on the debt due to defendant. *Id.* ¶ 3. Plaintiff does not deny these facts, but asserts that they are irrelevant and proved through hearsay. Plaintiff's Local Rule 56.1 Statement ("Pl.'s Stmt.") ¶¶ 1-3.

On May 7, 2008, defendant sent plaintiff a one-page, double-sided letter seeking to collect the balance allegedly owed to it. Def.'s Stmt. ¶ 4; Pl.'s Stmt. ¶ 4; Declaration of Douglas I. Greenberg dated December 15, 2008 ("Greenberg Decl."), Ex. A (copy of notice). The front page of the collection letter bears the headline "THREE OPPORTUNITIES." *See* Greenberg Decl. Ex. A. After explaining that defendant acquired a debtor account registered to plaintiff from Target National Bank, the letter sets forth three "opportunities" for plaintiff to settle her debt to defendant.[1] It also requests a response by June 21, 2008, and

---

[1] The opportunities are described as follows:

<u>OPPORTUNITY #1</u>

RJM would like to offer you the ability to settle this account with a lump sum payment of $493.39, a 50% discount off the balance due of

notes that "[u]pon completion of any of the above offers, your account will be Satisfied in Full," as well as stating that "[t]his is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.*

Below the settlement offers, in bolded and slightly larger type, the letter states, "Please see reverse side of this letter for important information regarding your right to dispute this debt and the effect of any such dispute on above offer(s)." *Id.*

The reverse side of the letter bears the headline "IMPORTANT INFORMATION ABOUT YOUR DEBT." After acknowledging the requirement to notify consumers of their rights, it states in the first of two text boxes:

> This communication is from a debt collector, and it and others from us are an attempt to collect a debt. Any information obtained will be used for that purpose. This debt is owed to RJM Acquisitions LLC. Unless you dispute the validity of all or part of this debt within 30 days after receipt of this notice, we will assume the debt is valid. If you notify us in writing within the 30-day period, we will mail a copy of verification of the debt or the judgment to you and will provide you with the name and address of the original creditor for this debt.

---

$986.79.

OPPORTUNITY #2

If you cannot take advantage of opportunity #1, RJM would like to offer you a settlement of $592.07, a 40% discount off the balance due of $986.79, payable in convenient monthly payments of $40.00.

OPPORTUNITY #3

If you cannot take advantage of opportunity #1 or #2, RJM is pleased to accept $20.00 per month until the balance due of $986.79 is paid.

*See* Greenberg Decl. Ex. A.

*Id.* Just below the first text box and above the second, the reverse side of the letter provides as follows:

> Your acceptance of the offer(s) described on the reverse side of this letter prior to the expiration of the 30-day period for dispute described above will not extinguish your right to dispute all or part of the original debt. All disputes within the 30-day period will be honored.

*Id.* In the second text box, which is approximately four times the size of the first text box, although the font size of the text it contains is the same as the first text box, the letter also contains various disclosures addressed to residents of California, Colorado, Massachusetts, North Carolina, Tennessee, and New York City, none of which are relevant here.

Plaintiff commenced this action on June 10, 2008. According to defendant, plaintiff has filed at least three other complaints in this district against different defendants alleging violations of the FDCPA, one of which was resolved on a motion to dismiss, one of which was settled, and one of which is still pending. Def.'s Stmt. ¶¶ 6-11. Plaintiff is represented by the same attorney in all four actions. *Id.* ¶ 14. Plaintiff does not deny that she filed three other complaints for FDCPA violations or that she is represented by the same attorney in these actions, but asserts that these facts are irrelevant. Pl.'s Stmt. ¶¶ 6-11, 14. Further, defendant alleges that plaintiff and her husband, Harold Stark, have twice filed for Chapter 7 Bankruptcy, once in 1993 and again in 2006. Def.'s Stmt. ¶¶ 12-13.

Plaintiff denies that she has filed for bankruptcy and asserts that the fact is irrelevant. Pl.'s Stmt. ¶¶ 12-13.

**DISCUSSION**

I. <u>Summary Judgment Standard of Review</u>

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must

raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

II. Plaintiff's FDCPA Claims

Plaintiff's claims in this matter are brought pursuant to the FDCPA, which was enacted "to protect consumers from unscrupulous debt collection practices . . . without imposing unnecessary restrictions on ethical debt collectors." *See Tromba v. M.R.S. Assocs., Inc.*, 323 F.Supp.2d 424, 426 (E.D.N.Y. 2004) (citing S.Rep. No. 382, 95th Cong., 1st Sess. 1-2, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1695, 1696). In particular, the legislation was intended "to eliminate the recurring problem

of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." 1977 U.S.Code Cong. & Admin. News at 1695-96; *see also* 15 U.S.C. § 1692(a)-(e) (legislative purpose is to eliminate abusive, deceptive and unfair debt collection practices including misrepresentation). Accordingly, pursuant to 15 U.S.C. § 1692g(a), when a debt collector[2] attempts to collect on a consumer debt, the FDCPA requires it to send the consumer[3] a detailed validation notice within five days of initial communication with the consumer. 15 U.S.C. § 1692g(a). This notice must include:

   (1)   the amount of the debt;

   (2)   the name of the creditor to whom the debt is owed;

   (3)   a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

---

[2] 15 U.S.C. 1692a(6) defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." It is undisputed that under this definition the defendant is a debt collector and is thus subject to the FDCPA.

[3] 15 U.S.C. 1692a(3) defines consumer as "any natural person obligated or allegedly obligated to pay any debt." It is undisputed that under this definition the plaintiff is a consumer and is accordingly entitled to the protections of the FDCPA.

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.*

Even if the validation notice contains the information prescribed by § 1692g(a), however, it may still violate the FDCPA if it does not convey that information "clearly and effectively" so that "the least sophisticated consumer [will not be] uncertain as to her rights." *Savino v. Computer Credit Inc.*, 164 F.3d 81, 85 (2d Cir. 1996); *see also DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). Accordingly, in determining whether a collection letter violates the FDCPA, courts apply an objective standard based on the least sophisticated consumer's reasonable interpretation of the letter. *Savino*, 164 F.3d at 85. The Second Circuit's "least sophisticated consumer" standard has been described as "an objective analysis that seeks to protect the naive from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters[.]" *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)

(internal quotation marks and citations omitted).

In her Complaint, plaintiff claims (1) that defendant failed to provide her with a validation notice that complies with the terms of 15 U.S.C. § 1692g, and (2) that defendant emphasized language in the collection letter that "overshadowed" the 30-day notice, in violation of both § 1692g and § 1692e.[4]  Compl. ¶¶ 24-25.  In its moving papers, defendant maintains that the validation notice complied with § 1692g, that there was no "overshadowing" language in the collection letter, and therefore, that summary judgment should be granted in its favor.  I consider plaintiff's two claims in turn below.

A.  *Validation Notice As Required By § 1692g*

Plaintiff's first objection to the validation notice is that it allegedly does not make clear that the consumer must provide written notice that she disputes the debt in order to receive verification of the debt.  For ease of reference, I recall the exact relevant language:

> Unless you dispute the validity of all or part of this debt within 30 days after receipt of this notice, we will assume the debt is valid.  If you notify us in writing within the 30-day period, we will mail a copy of verification of the debt or the judgment to you and will provide you with the name and address of the original creditor for this debt.

Greenberg Decl. Ex. A.  Plaintiff argues that because the second

---

[4] 15 U.S.C. § 1692e prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt[.]"

sentence cited above makes no reference to disputing the validity of the debt, the least sophisticated consumer would infer that she need only request verification of the debt in writing in order to receive it. Under § 1692g(a)(4), however, a debt collector must send verification of the debt only upon receipt of written notice that the debt is disputed. Accordingly, plaintiff argues that the language above is misleading as to the consumer's rights under the FDCPA.

Plaintiff's reading of the second sentence cited above ignores the first sentence, which discusses the consumer's right to dispute the debt. The phrase "[i]f you notify us in writing," because it immediately follows a sentence evoking the consumer's right to dispute the debt, must refer to notification of a dispute. Even standing alone, the second sentence cited above cannot be read to imply that the consumer will receive verification upon simple request; the consumer is directed to "notify" the debt collector, a word which implies that the consumer must take some action and inform the collector of the action in order to receive debt verification. Given the context of the preceding sentence, that action can only be understood to be disputing the validity of the debt. A reasonable juror would conclude that any other reading of the language quoted above constitutes the sort of "bizarre or idiosyncratic" interpretation that does not enjoy the protection of the FDCPA. *Greco*, 412 F.3d

at 363.

Next, plaintiff argues that if the language quoted above *does* properly direct the consumer to provide written notice that she disputes the debt in order to receive verification of the debt, it follows that the language misleads the consumer into believing that she must dispute the debt in order to receive the name and address of the original creditor. Under this theory, according to plaintiff, the notice unlawfully merges the distinct rights set forth in subsections (4) and (5) of § 1692g(a). As previously mentioned, § 1692g(a)(4) provides that a debt collector must send verification of the debt upon receipt of written notice that the debt is disputed. Pursuant to § 1692g(a)(5), however, the debt collector must provide the name and address of the original creditor to the consumer upon written request. I agree that a reasonable juror could find that the language of the notice at issue here could lead the least sophisticated consumer to believe she must dispute the debt in order to obtain the name and address of the original creditor. Accordingly, because a reasonable juror could find that the notice does not clearly convey the information required by § 1692g(a)(5), defendant's motion for summary judgment is denied as to this claim.[5]

---

[5] Plaintiff also contends that the notice creates a false and misleading impression that a judgment has been entered against plaintiff, as it refers to a "copy of verification of the debt or *the* judgment" rather than "verification of the debt or a copy of *a* judgment," the phrase employed by § 1692g(a)(4).

B.  *Unlawful Overshadowing of Validation Notice*

Plaintiff also maintains that language in the collection letter overshadows the validation notice required by § 1692g(a). The Second Circuit has "held repeatedly that a debt collector violates § 1692g(a), even if the collector includes an accurate validation notice, if that notice is overshadowed or contradicted by other language in communications to the debtor." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). A communication overshadows or contradicts the validation notice "if it would make the least sophisticated consumer uncertain as to her rights." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).

In support of her argument, plaintiff takes issue with the placement and length of the settlement offers presented on the front page of the collection letter. She argues that should the consumer not be interested by the offers, or should she fail to finish reading them, she might never notice the bolded sentence in larger type at the bottom of the front page directing her to "see reverse side of this letter for important information regarding [her] right to dispute this debt and the effect of any such dispute on above offer(s)." There are two problems with this argument. First, at least three courts in this district

---

Because I conclude for other reasons that the notice does not clearly convey the information required by § 1692g(a), I need not consider this argument.

have held, as a matter of law, that a settlement offer contained in a debt collector's initial communication with a debtor does not overshadow or contradict a validation notice contained in that same communication. *See Soffer v. Nationwide Recovery Sys., Inc.*, No. 06-CV-435, 2007 WL 1175073, at *4 (E.D.N.Y. Apr. 19, 2007); *Omogbeme v. Risk Mgmt. Alternatives, Inc.*, No. 01 CV 7293, 2003 WL 21909773, at *3 (E.D.N.Y. Aug. 4, 2003); *Harrison v. NBD*, 968 F.Supp. 837, 847-48 (E.D.N.Y. 1997). Second, even the least sophisticated consumer would not read a collection letter so carelessly so as not to notice a bolded instruction in larger type to "see reverse side of this letter for important information." *See, e.g.*, *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (noting that "courts have held that even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care"); *Hernandez v. Affiliated Group, Inc.*, No. 04 CV 4467, 2006 WL 83474, at *3 (E.D.N.Y. Jan. 12, 2006) (noting that the presumption referred to in *Clomon* "can hardly mean anything if it does not include an expectation that the debtor will persevere to the second page for at least a quick skim"). Accordingly, no reasonable juror could find that the settlement offers overshadow the validation notice on the back of the collection letter.

Next, plaintiff argues that even if the consumer flips to

the reverse side of the letter, there are too many notices and there is bold type in the wrong places, distracting the consumer from the 30-day notice. As previously described, the back of the collection letter is organized around two text boxes, the first containing the validation notice, and the second, which is approximately four times larger than the first, containing various notices to residents of specific states. In addition, in the second text box, six lines of bolded text, such as "**The state of California requires that we disclose the following for California Residents**," alert the reader to which state residents the different notices contained in the second text box apply. Plaintiff argues that the consumer is drawn to the bold type and, reading the bolded lines of text and concluding that none of the notices apply to her, would not proceed to read the notices themselves in either text box. This argument ignores the fact that the lines of bolded text appear only in the second text box, not the first, and that first text box, which contains the validation notice, appears squarely at the top of the page and is among the first things the consumer is likely to read. Given the validation notice's prominent placement, no reasonable juror could conclude that the inclusion of other notices on the same page overly distracts from the validation notice.

Finally, plaintiff takes issue with the following language, which appears immediately below the validation notice:

> Your acceptance of the offer(s) described on the reverse side of this letter prior to the expiration of the 30-day period for dispute described above will not extinguish your right to dispute all or part of the original debt. All disputes within the 30-day period will be honored.

Greenberg Decl. Ex. A. Although she questions "what exactly could possibly be meant by this," asserting her "belief that had anyone elected any of [the offers] and also disputed the debt, the dispute would have been mooted or [defendant] would have collected the debt as if no dispute had actually taken place," Pl.'s Mem. in Opp'n at 13, plaintiff does not suggest that the language quoted above confuses the least sophisticated consumer as to her rights under the FDCPA. Accordingly, no triable issue of fact relating to that language exists, and summary judgment is granted in defendant's favor on plaintiff's overshadowing claim.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in part and denied in part. Plaintiff is directed to move for certification of a class of plaintiffs within 90 days of the date of this opinion. Limited discovery may proceed in this regard to allow plaintiff to identify those individuals residing in the Eastern District of New York who received communications from defendant, from the period beginning one year prior to the filing of the complaint in this matter and thereafter, which failed to notify them that they had a right to obtain the name and address of the original

creditor upon request without disputing their debts.

The Clerk is directed to transmit a filed copy of the within to the parties and the Magistrate Judge.


SO ORDERED.

Dated :   Brooklyn, New York
          March 9, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge